Filed 9/22/21  P. v. Gann CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> NATHANIEL MARCUS GANN, <br><br> Defendant and Appellant. | D077769 <br><br><br> (Super. Ct. No. SCD207862) |

APPEAL from orders of the Superior Court of San Diego County, Frederick L. Link, Judge.  Reversed and Remanded.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers, Kristen Chenelia and Christopher P. Beesley, Deputy Attorneys General for Plaintiff and Respondent.

## INTRODUCTION

In April 2009, a jury convicted Nathaniel Marcus Gann of first degree murder in the shooting death of his stepfather but found he did not intentionally and personally discharge a firearm in the commission of the murder or commit the murder with the special circumstance of lying in wait. He was sentenced to a term of 25 years to life.

In January 2020, one year after Penal Code[1] section 1170.95 became effective, Gann filed two petitions for resentencing and requested the appointment of counsel. Both times, and without first appointing counsel, the trial court found Gann failed to make a prima facie showing that he was eligible for relief and denied the petitions. Gann timely appealed both orders, asserting the court erred by summarily denying the petitions without appointing counsel and giving the parties the opportunity to file additional briefing.

While his appeal was pending, the California Supreme Court decided *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*) and held that section 1170.95 requires the trial court to appoint counsel "upon the filing of a facially sufficient petition" and *before* determining whether the petitioner has made a prima facie showing of eligibility.[2] (*Id.* at p. 970.) We agree with the People's concession that, in light of *Lewis*, the court's failure to appoint counsel for Gann was error. We disagree, however, with the People's contention that the error was harmless. Accordingly, we reverse the orders

_____

[1]    All further statutory references are to the Penal Code.

[2]    After *Lewis* was decided, at this court's request, the parties submitted supplemental briefing on whether the trial court's failure to appoint counsel for Gann before denying his petitions was prejudicial.

and remand the matter to the trial court with instructions to appoint counsel for Gann and allow the parties to provide additional briefing on the petition consistent with section 1170.95.

FACTUAL AND PROCEDURAL BACKGROUND

Gann and his sister, Brae Hansen, were convicted of the murder of their stepfather, Timothy MacNeil, by separate juries in a joint trial.[3] At the time of the murder, Hansen was living with MacNeil in San Diego, while Gann was attending college in Arizona. Gann and Hansen's mother had died the year before and MacNeil had started a new relationship. MacNeil told Hansen she needed to prepare to move out when she turned 18. This angered Hansen, and she and Gann plotted to kill MacNeil. They initially planned to hire a hitman to stage a home invasion robbery, but were unable to find one to hire.

Hansen claimed she no longer wanted to go through with the murder when the hitman plan fell through, but Gann came to MacNeil's house early one morning and told Hansen they were going to proceed with a modified version of the plan whether she wanted to or not. MacNeil was not home when Gann arrived, but returned later that day and was confronted by Gann dressed in black and wearing a mask. Hansen claimed she walked downstairs moments later and saw Gann pointing a gun at MacNeil. Gann zip-tied Hansen's hands and took her into another room. She heard a struggle followed by several gunshots. MacNeil was shot in the back of the head and died instantly.

---

[3] The relevant facts of the murder are summarized from this court's opinion affirming the judgment of conviction in Gann's direct appeal, *People v. Nathaniel Marcus Gann* (2011) 193 Cal.App.4th 994.

Gann's cellmate testified at trial that Gann told him that he and Hansen decided to " 'take care of' " MacNeil. Gann told his cellmate that he wore a mask and " 'acted like it was a robbery.' " Gann tied up Hansen and MacNeil, but MacNeil managed to get free. As Gann was tying up MacNeil again, he accidentally fired the gun and hit MacNeil. Gann then shot him in the head and fled the scene. Gann presented a defense that suggested Hansen was the actual killer.

Hansen's jury convicted her of first degree murder and found true the allegations that she committed the murder with the special circumstance of lying in wait and while vicariously armed with a firearm. Gann's jury also convicted him of first degree murder, but found the allegations that Gann committed the murder while lying in wait or that he intentionally and personally discharged a firearm in the commission of the murder to be not true. The trial court sentenced Gann to a prison term of 25 years to life.

In January 2020, Gann filed a petition for resentencing pursuant to section 1170.95. He averred that he was convicted of first degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine and that he could not now be convicted of first degree murder because of the legislative changes to sections 188 and 189 made effective January 1, 2019. He further stated that he was not the actual shooter, was acquitted of that allegation by a jury, and the evidence demonstrated that the murder took place in a manner of surprise or he was not present and was determined to be liable in another unknown way. Gann requested the appointment of counsel to represent him on his petition.

On July 13, 2020, the trial court, without appointing counsel for Gann, found that Gann failed to make a prima facie showing that he was entitled to relief because he "was the actual shooter and planned the crime" and denied

4

the petition. Approximately one week later, on July 20, 2020, Gann filed another petition for resentencing, in which he again stated the jury's finding on the gun enhancement indicated he was not the actual shooter, and again requested the appointment of counsel. On August 19, 2020, the trial court again, without appointing counsel, found that Gann failed to make a prima facie showing that he was entitled to relief "[b]ased on [the] facts of the case" and denied the petition. Gann timely appealed both orders denying his petition for resentencing.

## DISCUSSION

Gann's primary contention on appeal is the trial court prejudicially erred by summarily denying his petitions without appointing him counsel and permitting additional briefing. We agree.

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).) In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis, supra,* 11 Cal.5th at p. 959.)

A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition for resentencing under section 1170.95 if: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences

5

doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subds. (a)(1)–(3).) The petition must include a declaration stating the petitioner is eligible for relief "based on all the requirements of subdivision (a)," and whether the petitioner requests the appointment of counsel. (§ 1170.95, subd. (b)(1).)

Pursuant to section 1170.95, subdivision (c), "[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court *shall* appoint counsel to represent the petitioner." (Italics added.) The parties then proceed with additional briefing and, "[i]f the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause" (§ 1170.95, subd. (c)) and "hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts" (*id.*, subd. (d)(1)).

Previously, some courts interpreted section 1170.95, subdivision (c), "to require two distinct, sequential inquiries," with the trial court being required to appoint counsel only once it determined the petitioner was not ineligible for relief as a matter of law. (*Lewis, supra,* 11 Cal.5th at p. 961; see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327.) While Gann's appeal was pending, the California Supreme Court decided *Lewis* and expressly rejected that interpretation. It clarified that "subdivision (c) does not establish an internal, threshold barrier to the appointment of counsel and the opportunity

6

for briefing." (*Lewis,* at p. 967.) Instead, "petitioners who file a complying petition requesting counsel are to receive counsel *upon the filing* of a compliant petition." (*Id.* at p. 963, italics added.)

Here, there is no dispute Gann filed a facially sufficient petition. In light of *Lewis*, the People concede the trial court erred by failing to appoint counsel for Gann but argue the error was harmless. We agree with the People's concession and conclude the trial court erred by denying Gann's petition at the prima facie stage without appointing counsel and permitting additional briefing. We disagree, however, with the People's contention that the error was harmless.

Our high court in *Lewis* addressed the standard for prejudice and held the failure to appoint counsel is one of purely state law, subject to the harmless error test set forth in *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis, supra,* 11 Cal.5th at pp. 957–958.) "More specifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing." ' " (*Id.* at p. 974.)

The People assert Gann's petitions would have been summarily denied even with the assistance of counsel because Gann is ineligible for relief as a matter of law. They argue the jury was not instructed on felony murder or natural and probable consequences theories of liability and, instead, the court confined the possible theories of first degree murder to willful, deliberate, and premeditated murder and lying-in-wait murder. We are not persuaded.

The People are correct that the first degree murder instruction given to the jury stated: "The defendant has been prosecuted for first degree murder

under two theories: (l) that the murder was willful, deliberate, and premeditated, and (2) that the murder was committed by lying in wait."

However, the jury also received instructions regarding evidence of an uncharged conspiracy which stated the People contended Gann and Hansen conspired to commit murder and that Gann could be found guilty of murder under a conspiracy theory. The jury was further instructed that: "A member of a conspiracy is also criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a *natural and probable consequence* of the common plan or design of the conspiracy. This rule applies even if the act was not intended as part of the original plan. Under this rule, a defendant who is a member of the conspiracy does not need to be present at the time of the act." (Italics added.)

The jury found Gann guilty of first degree murder, but found the lying-in-wait special circumstance allegation not true, leaving only the "willful, deliberate, and premeditated" theory from the first degree murder instruction. As Gann pointed out in his petitions for resentencing, the jury also found the allegation that he intentionally and personally discharged a firearm in the commission of the murder to be not true. That finding is consistent with a conclusion that the jury did not believe Gann was the actual shooter—contrary to the trial court's findings on at least the first petition.

In light of the jury's "not true" finding regarding Gann's personal use of a firearm, and its determination that he did not kill MacNeil by means of lying in wait, it is not entirely clear what theory the jury relied upon to find Gann guilty of first degree murder. Instead, it is at least conceivable that the jury convicted Gann based on an act undertaken by his alleged coconspirator, Hansen, that was the natural and probable consequences of the original

8

conspiracy. For example, the jury could have concluded Gann *originally* agreed and intended to commit the murder by hiring a hitman, that Hansen then committed the murder on her own once the hitman plan fell apart, and that Hansen's act was a natural and probable consequence of the original common plan or design.[4] Liability for first degree murder under a conspiracy theory is analogous to that of an aider and abettor, and an aider and abettor can no longer be convicted of first degree murder under a natural and probable consequences theory. (*Lewis, supra,* 11 Cal.5th at pp. 958–959, fn. 3; *People v. Gentile* (2020) 10 Cal.5th 830, 848–849; *People v. Rivera* (2015) 234 Cal.App.4th 1350, 1356.)

The People argue the only conspiracy on which the jury was instructed was the conspiracy to commit murder, and that conspiracy to commit murder requires specific intent to kill. While we agree that a defendant must have the specific intent to kill to be convicted of conspiracy to commit murder, the cases the People rely upon each address a charged conspiracy. (See *People v. Garton* (2018) 4 Cal.5th 485, 515–516 (*Garton*); *People v. Juarez* (2016) 62 Cal.4th 1164, 1167.) Here, Gann was not charged with or convicted of a conspiracy to commit murder. As a result, the record does not include findings by the jury specific to the alleged conspiracy and it is not clear that the jury, as instructed, in *this* case understood a conviction for first degree murder based on a conspiracy theory required that Gann had the specific intent to kill MacNeil. Whether there was a viable theory under which the jury could have convicted Gann, without determining he had such specific

---

[4] To be clear, we offer no opinion on whether this is an appropriate way to reconcile the evidence, the instructions, and the verdict, but simply conclude that Gann is entitled to the assistance of counsel in presenting his interpretation of an arguably confusing trial record to the superior court judge who reviews his petition.

intent, requires a review of the evidence and, thus, should be resolved by the trial court.

Further, in *Garton,* upon which the People rely, the California Supreme Court concluded the jury was improperly instructed with a variant of CALJIC No. 8.69 that "could potentially lead a jury to find an individual conspirator guilty without finding that he or she possessed a specific intent to agree or to kill," but found the error harmless based on a special circumstance finding that required intent to kill. (*Garton, supra,* 4 Cal.5th at pp. 516–517.) Similarly, here, it is at least conceivable the instructions given permitted the jury to reach a verdict without concluding Gann had the specific intent to commit, or to conspire to commit, the actual murder. Here, however, there was no conviction on conspiracy to commit murder for Gann to address in his direct appeal, and there was no special circumstance finding to clarify the verdict.

Considering the full set of instructions given to the jury and the complex nature of the underlying legal theories of liability, we conclude there is *at least* a reasonable probability that Gann's petition would not have been denied prior to the issuance of an order to show cause had Gann been afforded legal counsel. In reaching that conclusion, we express no opinion as to whether the petition should ultimately be granted and, instead, simply determine there is sufficient basis to find there is a reasonable probability an evidentiary hearing may be warranted such that Gann is entitled to counsel on the petition in accordance with the California Supreme Court's holding in *Lewis*. Accordingly, we reverse and remand the matter to the trial court with instructions for the court to appoint counsel for Gann and permit additional briefing in accordance with section 1170.95, subdivision (c).

## DISPOSITION

The orders denying Gann's petition for resentencing are reversed.  The matter is remanded to the trial court with instructions to appoint counsel and allow briefing on the most recent petition.


DO, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.